UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CANTY, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>DEPUY ORTHOPAEDICS INC., et al.,<br><br>　　　　Defendants. | Case No. 14-cv-05407-JSW<br><br>**ORDER GRANTING REMAINDER OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 36 |

This matter comes before the Court upon consideration of the motion for summary judgment filed by Defendants DePuy Orthopaedics, Inc. (n/k/a Medical Device Business Services, Inc.), DePuy, Inc., Johnson & Johnson, Johnson & Johnson Services, Inc., and Johnson & Johnson International (collectively "Defendants") and required supplemental briefing.

On June 5, 2024, the Court issued an Order in which it denied Defendants' *Daubert* motions and denied, in part, Defendants' motion for summary judgment because there were disputed issues of fact regarding medical causation. In light of that ruling, Plaintiffs' claims for negligence and loss of consortium will proceed, to the extent the negligence claim is premised on a design defect. This Order addresses the remaining portions of Defendants' motion,, which it GRANTS.

**BACKROUND[1]**

On February 4, 2009, Dr. Christopher Chen performed a total hip replacement on Plaintiff Richard Canty ("Mr. Canty") using the DePuy Pinnacle metal-on-metal implant ("the Implant").

---

[1] Unless otherwise noted, the facts are undisputed.

(Declaration of Ryan H. Chan ("Chan Decl."), ¶ 4, Ex. B (Medical Records at 3_JS_068-69).)[2] Dr. Chen was a paid consultant for DePuy between 2004 and 2010. During that time, he was part of a surgeons panel that met "three to four times a year to discuss current innovations, products and techniques and share experiences with those." (Declaration of Jennifer R. Thomas ("Thomas Decl."), ¶ 5, Ex. 4 (Deposition of Dr. Christopher Chen ("Chen Depo.") at 42:16-43:1).) Dr. Chen "pretty much" used DePuy products exclusively in his practice because he felt they were "state-of-the-art" products. (*Id.* (Chen Depo. at 39:19-21).) The choice to use the Implant on Mr. Canty "would have been [Dr. Chen's] recommendation." (Chan Decl. ¶ 3, Ex. A (Chen Depo. at 50:3-5, 90:2-4).) In 2009, Dr. Chen had used the Implant for about four years and had no major issues with it. (Thomas Decl., Ex. 4 (Chen Depo. at 46:8-16).)

The "Instructions for Use ('IFU')" accompanying the Implant include the following information:

> Peripheral neuropathy, deep wound infection, and heterotopic bone formation have been reported following hip replacements. … Dislocation and subluxation resulting from improper positioning and/or muscle and fibrous tissue laxity may also occur, as may loosening and subsequent failure of the total hip prosthesis.
>
> …
>
> Implanted metal alloys release metallic ions into the body. In situations where bone cement is not used, higher ion release due to increased surface area of a porous coated prosthesis is possible.
>
> … Shedding or fragmentation of the porous surface has been reported, with potential for release of metallic debris into the joint space. …
>
> **Serious adverse effects may necessitate surgical intervention.**

(Chan. Decl., ¶ 6, Ex. D (IFU Depuy058129723 (emphasis in original)).)

According to Plaintiffs, the Implant is "defective because it was designed to allow the generation of a toxic amount of metal particulate debris," which were released into Mr. Canty's body. (Thomas Decl., ¶ 2, Ex. 1 (Expert Report of Alfred H. Burstein, Ph.D. ¶ 97).) Dr. John Velyvis opined that "[i]t is more likely than not to a reasonable medical certainly that the metal on

---

[2] Mr. Canty's medical records show that he had been diagnosed with arthritis and more conservative treatments were not successful. (Medical Records at 3_JS_068-69.)

metal prosthesis failed by producing exuberant metallic debris particles and metal ions. This destruction of soft tissue and bone and excessive fluid in and around the joint resulted in infection with Streptococcus viridans." (Thomas Decl., ¶ 3, Ex. 2 (Expert Report of John H. Velyvis, M.D. at p. 1).)

Plaintiffs contend Defendants failed to warn Dr. Chen that metal-on-metal implants "could experience unusual, premature, or increased friction and/or wear and tear," which could damage surrounding tissues and/or cause the Implant to fail prematurely. (First Amended Complaint ¶ 108.) They also claim Defendants failed to warn Dr. Chen that metal-on-metal implants "generated unusually high amounts of metal wear debris and metal ions over time due to the premature and/or increased friction and/or wear and tear of the device, and that this debris and ions can spread throughout the surrounding bone and tissue and cause serious complications, and damage," such as adverse reaction to metal debris, adverse local tissue reaction, aseptic lymphocyte-dominated vasculitis-associated lesion, metallosis, and pseudotumors. (*Id.* ¶ 109.)

Dr. Chen testified that it was "very highly likely" he had discussions with DePuy sales representatives about the Implant. However, he could neither recall statements or documents on which he relied to make his recommendation. (Chan Decl., Ex. A (Chen Depo. at 48:11-49:17).) Dr. Chen testified that he relies on his medical knowledge, training, and experience, peer reviewed literature, and what he has learned at orthopedic conferences when he chooses medical devices. (*Id.* at 67:1-9.)

Mr. Canty's medical records indicate that Dr. Chen discussed risks associated with the surgery, including infection and the potential need for future revision surgery. (Medical Records at 3_JS_068; *see also* Chan Decl., Ex. A (Chen Depo. at 90:5-22 (noting that infection is a risk in any surgery and is a lifetime risk with a prosthetic implant), 92:4-11).) Mr. Canty consented to the surgery. (Medical Records at 3_JS_068.)

Three years after his surgery, Mr. Canty began to experience stiffness and pain. (*Id.* at 3_JS_08-09.) Mr. Canty saw Dr. Chen on January 29, 2013 because the pain had increased over the prior two weeks. "X-rays showed some osteolysis around the proximal femur consistent with possible adverse reaction to the metal on metal bearing surface." (*Id.* at 3_JS_09.) On February 2,

2013, Mr. Canty was admitted to the emergency room "with fevers up to 102 and continuing increased right hip pain." (*Id.*) Dr. Chen performed a right hip aspiration that disclosed a "dark red/black fluid", diagnosed Mr. Canty with right total hip infection, and recommended surgical intervention. (*Id.* at 3_JS_09, JS_13.) According to Dr. Chen, the fluid indicated "there was some metal wear going on." (Chan Decl., Ex. A (Chen Depo. at 118:12-15).) Dr. Chen again discussed the risks of surgery, including infection, and Mr. Canty consented to a "one stage" revision procedure. (Medical Records at 3_JS_09; *see also id.* at 3_JS_13-14.) Dr. Chen would not have recommended emergency surgery if the infection was not present. (Chan Decl., Ex. A (Chen Depo. at 119:8-12).)

Dr. Chen performed emergency surgery to revise the Implant using a polyethylene liner. During the surgery, Dr. Chen performed another hip aspiration that disclosed a dark red fluid. (Medical Records at 3_JS_08-09.) Dr. Chen also noted that "scar tissue looked consistent with a metal reaction." (*Id.* at 3_JS_09.) Because of the infection, Mr. Canty was prescribed antibiotics. (*Id.* at 3_JS_10.) On February 9, 2013, Dr. Chen performed the first stage of a two-stage revision because the infection persisted. (Chan Decl., Ex. A (Chen Depo. at 141:9-142:4).) While in the hospital for this surgery, Mr. Canty went into renal failure. (Medical Records at 10_RC_286.) On June 20, 2013, Dr. John L. Kronick performed a right revision total hip arthroplasty on Mr. Canty. (Medical Records at 4_RC_90-92.)

On December 10, 2014, Mr. Canty and his wife, Betsy Canty ("Mrs. Canty"), filed their initial complaint. On September 30, 2022, Plaintiffs filed an amended complaint, in which they asserted claims for negligence, strict products liability based on a failure to warn and on a design defect, fraud/fraudulent concealment, negligent misrepresentation, and breach of the implied warranty of merchantability.[3]

The Court will address facts as necessary in the analysis.

//

//

---

[3] Ms. Canty also has sued for loss of consortium. That claim rises or fall with Plaintiffs' other claims.

4

# ANALYSIS

## A. Applicable Legal Standard.

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may not weigh evidence or make determinations of credibility. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248. A fact is "material" if it may affect the outcome of the case. *Id.* If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, the party must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the non-moving party must introduce some significant probative evidence tending to support the complaint." *Summers v. A. Teichert Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving

1 party fails to point to evidence precluding summary judgment, the moving party is entitled to
2 judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.  Defendants Are Entitled to Judgment on Plaintiffs Remaining Claims.**

   **1.  Strict Liability (Design Defect) and Implied Warranty of Merchantability.**

Defendants argue that Plaintiffs cannot prevail as a matter of law on their claims for strict liability based on a design defect and breach of the implied warranty of merchantability. Plaintiffs failed to respond to those arguments. The Court concludes Defendants are entitled to judgment in their favor on those claims. *See, e.g., Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 892 (N.D. Cal. 2013) ("California law precludes liability for manufacturers of prescription medical devices under a design defect theory."); *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (2008) (plaintiff lacked privity and therefore could not sue for breach of implied warranty).

   **2.  Failure to Warn (Strict Liability and Negligence).**

To prevail on their failure to warn claims, under either a negligence or strict liability theory, Plaintiffs must be able to show Defendants' warning was inadequate and that the inadequate warning was a substantial factor in causing their harm. *See Himes v. Somatics, LLC*, 16 Cal. 5th 209, 221-25 (2024) ("*Himes II*") (addressing question certified from United States Court of Appeals for the Ninth Circuit). Because the Court concludes Plaintiffs' claims falter on causation, it does not address whether Defendants' warning was adequate.

Under California law, a manufacturer's duty to warn runs to the physician. Pursuant to this "learned intermediary doctrine," a "manufacturer's failure to warn the patients physician results in a breach of its general duty of care to the patient under negligence principles or a breach of its obligation to market a product free from defects under strict liability principles. The patient may seek to hold the manufacturer liable by showing that the breach caused the patient's injury." *Id.* at 224.

In the case underlying *Himes II,* one patient's doctor testified he did not rely on a disclosure from the defendants and did not pay attention to literature on updated safety information issued by manufacturers. *Himes v. Somatics, Inc.*, No. 21-55517, 2022 WL 989469,

1  at *2 (9th Cir. Apr. 1, 2022). The court reasoned that "no reasonable jury could conclude from [that] testimony that" the plaintiff's physician "would have become aware of any stronger warnings[.] And as we have explained in a similar situation …, when a plaintiff cannot show that the prescribing physician would have learned about a stronger warning in the first instance, there cannot be a causal nexus between the allegedly inadequate warning and the plaintiff's injury." *Id.* (citing *Motus v. Pfizer, Inc.*, 358 F.3d 659, 661 (9th Cir. 2004)).

However, Himes' physician testified that he did pay attention to safety information provided by manufacturers and would have included warnings about increased risks in his consent forms and would discuss them with his patients. *Id.*, at *3. The court found that a reasonable jury could conclude the physician would have "become aware of the stronger risk warnings." Because the risk at issue included permanent brain damage, the court also determined a prudent patient in Hime's position "would have declined the treatment after receiving warnings about" the risk. *Id.* However, there was no testimony that the doctor would have altered his prescribing conduct. *Id.* If that fact was outcome determinative, Hime's claim would fail.

The California Supreme Court held that a plaintiff may establish causation by showing the physician would have altered their conduct in the face of stronger warnings but is not required to do so. A plaintiff also can establish causation by showing the physician "would have communicated [a] stronger warning to the patient and an objectively prudent person in the patient's position would have thereafter declined the treatment notwithstanding the physician's continued recommendation of the treatment." *Himes II*, 16 Cal. 5th at 926.

Here, Dr. Chen testified he could "not recall a single statement" or a "single document" from a DePuy sales representative on which he relied and testified that he selected DePuy products because he believed they were state-of-the art. (Chan Decl., Ex. A (Chen Depo. at 49:7-18, 49:22-50:5).) Thus, there is no evidence that he directly relied on any of Defendants' safety materials before recommending the Implant to Mr. Canty. Dr. Chen was a consultant for DePuy at the time of Mr. Canty's surgery and did testify about his participation on the surgeon's panel. That may suggest he could have become aware of stronger warnings about metal-on-metal implants but a "mere scintilla of evidence" is not sufficient to overcome Defendants' motion. *Summers*, 127 F.3d

at 1152. Even if that evidence was sufficient to create a genuine dispute about whether Dr. Chen would have become aware of stronger warnings and would have communicated those warnings to Mr. Canty, Plaintiffs still fail to show there are disputed facts about what Dr. Chen would – or would not - have done in the face of such warnings.

Dr. Chen testified that he had been using the Implant without issue at the time of Mr. Canty's surgery. His testimony that at some unspecified point in time thereafter he could not justify using the Implant is not sufficient to establish what he would have done in 2009. Finally, there is simply no evidence of what a reasonably prudent patient in Mr. Canty's position would have done in the face of stronger warnings if Dr. Chen would not have changed his recommendation. Because the risks here are significantly different from permanent brain damage, the Court cannot find a reasonable juror could conclude Mr. Canty would have declined to proceed with the Implant.

Accordingly, the Court GRANTS Defendants' motion for summary judgment on the failure to warn claims, as well as on Mrs. Canty's associated claim for loss of consortium.

**3.     Fraud and Negligent Misrepresentation.**

Reliance is an essential element of each of Plaintiffs' claims for fraud and negligent misrepresentation. For the reasons set forth in the previous section, Plaintiffs fail to meet their burden to show there are genuine disputes of material fact on that element. Accordingly, the Court GRANTS Defendants' motion for summary judgment on these claims, as well as on Mrs. Canty's associated claim for loss of consortium.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the remainder of Defendants' motion for summary judgment. The Court ORDERS the parties to file a joint status report by September 30, 2024 to address whether they are amenable to a referral to Magistrate Judge Illman for a settlement conference.

//

//

//

It is FURTHER ORDERED that the Court continues the pretrial conference to February 3, 2025 at 2:00 p.m., jury selection to February 19, 2025 at 8:00 a.m., and trial to February 24, 2025 at 8:00 a.m.

**IT IS SO ORDERED**.

Dated: September 10, 2024

_____
JEFFREY S. WHITE
United States District Judge